### GULF, C. & S. F. RY. CO. *v.* JAMES.

*(Circuit Court of Appeals, Eighth Circuit. October Term, 1891.)*

**1. SUMMONS—AMENDMENT TO CONFORM TO COMPLAINT.**
　Under Mansf. Dig. Ark. § 5080, which by Act Cong. May 2, 1890, § 31, was extended over the Indian Territory, it is proper to allow a summons to be amended by changing the name of the plaintiff therein from P. R. Jones to P. R. James, so as to conform to the complaint.

**2. SAME—SUFFICIENCY—STATEMENT OF CAUSE OF ACTION.**
　Under Mansf. Dig. Ark. § 4968, it is no objection to a summons that it fails to set forth the cause of action stated in the complaint. .

**3. JURIES—SUMMONING AND IMPANELING—LISTS—STRIKING OF NAMES.**
　Mansf. Dig. Ark. § 4013, relating to jurors, which by Act Cong. May 2, 1890, was extended over the Indian Territory, provides that, if either party shall desire a panel, the court shall cause the names of 24 competent jurors to be placed in a box from which the names of 18 shall be drawn and entered on a list. Section 4014 provides that each party shall be furnished with a copy of this list, from which each may strike the names of three jurors, and the 12 names remaining shall constitute the jury. *Held,* that the refusal of the court to furnish the parties, on request, with such list of 18 jurors is reversible error.

In Error to the United States Court in the Indian Territory for the Third Judicial Division.

Action by Phillip R. James against the Gulf, Colorado & Santa Fe Railway Company. There was judgment for plaintiff, and defendant brings error. Reversed.

*C. L. Jackson, E. D. Kenna,* and *Adiel Sherwood,* for plaintiff in error.

*W. A. Ledbetter* and *O. W. Patchell,* for defendant in error.

Before CALDWELL, NELSON, and HALLETT, JJ.

NELSON, J. This was an action brought to recover damages for personal injuries sustained by the plaintiff below through the alleged negligence of the railway company, and for exposure by reason of being compelled to leave the section boarding-house of the company after being injured. On the trial a verdict was rendered against the company for the sum of $2,750.

The facts as they appear in the bill of exceptions are these: The plaintiff below, Phillip R. James, was a sectionman employed by the railway company, working on its road near Berwyn station, in the Chickasaw Nation, Indian Terr. He was injured on July 12, 1890, while aiding in unloading a hand-car. The freight train bringing this car stopped about 3½ miles from this station, opposite the place where James, with three other section hands, were eating their dinner, and a road-master, by name Jim Connors, came to the men and said: "We got a hand-car to unload for you boys." He asked where the rest of the men were, and, on being informed, gave orders to unload the car. Six sectionmen, four trainmen, the section foreman, and the road-master assisted in unloading. The road-master gave the sectionmen instructions to unload, and some of them opened the door, and went into the freight-car, and set the hand-car in a position on one side, and slid it out of the door, so that the men outside could get a good hold. As the hand-car was partly out, and nearly all the weight rested upon the shoulders of James, he informed the men, and some came to his assistance, and let it down about half way to his waist, and Jim Connors, the road-master, who had hold of the hand-car, assisting in unloading, gave an order, "Let her go," and the hand-car turned over and fell upon James, injuring his back. The character of the ground where the hand-car was unloaded was well known to James, and there is no evidence that it was dangerous to unload it at that place, but only inconvenient, as no depot platform was there. The car was furnished for the use of the sectionmen to carry them to and from their homes; and there is no evidence in the case to show that James was carried beyond his employment when, in obedience to the orders of the road-master, he went to aid in unloading it.

The specific acts of negligence charged in the complaint are: (1) That Jim Connors, a road-master of the railway company, who ordered James to assist in unloading the hand-car, was guilty of gross negligence and carelessness in selecting a place to unload the same where there was no depot platform; (2) by commanding the men assisting in unloading to turn the car loose while James was in such a position that he could not prevent its falling upon him.

The record furnished is voluminous, made so by the unnecessary repetition therein of the same deposition taken and read on the trial, and other proceedings prior and subsequent thereto, and also by the assignment of errors, 58 in number. Most of them are trivial, and indicate that proper care and attention were not given by counsel in the preparation of the case. A few are meritorious: It is urged that the court erred in deciding that it had jurisdiction of the case, and permitting the plaintiff below to amend the summons. The original complaint was filed January 17, 1890, in the office of the clerk at "Ardmore," where the court is held for the third judicial division, and on the same day a writ of summons was duly issued to the marshal, and returned with an indorsement thereon, "Personally served on an agent of the railway company at Ardmore, Indian Territory." This summons commanded the

defendant to answer on the first day of the next March term, "a complaint filed against it in said court by Phillip R. Jones, and warns it that upon failure to·answer the complaint will be taken for confessed." A motion was made and filed on the first day of the March term to quash the writ of summons, which was withdrawn and renewed on the next day, for reasons alleged briefly: That the summons was improperly and illegally issued, and no cause of action is set forth therein, and the nature of the complaint·is not shown; and also that there is a variance in the name of the plaintiff as contained in the complaint and the summons. The court granted a motion to amend the summons by changing the name of the party plaintiff from Phillip R. Jones to Phillip R. James, and afterwards the motion to quash the writ was overruled, and rightly. The amendment of the summons was proper, and fully authorized by section 5080, Mansf. Dig., of the Arkansas statutes, which was the law extended over the Indian Territory, and governing applications to amend. This section is as broad as the statutes of the United States relating to amendments, (Rev. St. U. S. §§ 948–954,) and the change of the name in the summons was allowed in furtherance of justice, and certainly within the discretion of the court. Neither does the practice act in force in the territory require the nature of the cause of action as·stated in the complaint to be set forth in the summons. Mansf. Dig. § 4968. The complaint is filed in the clerk's office, and the purpose of the summons is to inform the defendant served of the fact, so that· he can ascertain the cause of action alleged against it. The original complaint was amended, and the defendant filed a demurrer, which was overruled, and a motion to strike out certain portions of the same was denied, and the defendant filed its answer. When the case was called for trial the counsel for the railway company, before the jury was impaneled, requested the court "to cause a list of eighteen competent and qualified jurors to be made, and to furnish counsel of both parties with a copy of such list, from which each party might strike the names of not exceeding three jurors, and from said list the twelve jurors to try this cause should be selected; and that the jury to try this cause be selected as is by the statutes in such case made and provided." This request was refused, to which exception was taken, and such refusal is duly assigned as error. On May 2, 1890, congress passed an act to enlarge the jurisdiction of the United States court in the Indian Territory. In section 31 certain general laws of the state of Arkansas as contained in Mansfield's Digest, published in 1884, are extended over the territory, and among these laws is mentioned chapter 90, the provisions of which relate to the selection and summoning of jurors and drawing of a trial jury. Section 4013 of this Digest enacts that, "if either party shall desire a panel, the court shall cause the names of twenty-four competent jurors, written upon separate slips of paper, to be placed in a box, to be kept for that purpose, from which the names of eighteen shall be drawn and entered on a list in the order in which they were drawn and numbered." Section 4014 provides that "each party shall be furnished with a copy of said list, from which each may strike the names of three jurors, and return the

list so struck to the judge, who shall strike from the original list the names so stricken from the copies, and the first twelve names remaining on said original list shall constitute the jury." Section 4015 provides, in substance, that before drawing the list of 18 the court shall decide all challenges for cause which are presented, and, if there are not 24 competent jurors, by-standers shall be summoned until the requisite number of competent jurors is obtained, from which said list shall be drawn. Under these sections parties are entitled to have 18 jurors on the list before they are required to exercise the right of peremptory challenge. The denial of the request for a panel, as provided by the statute, deprives the defendant of a substantial right, and gave it a jury different from that which the law provided. The defendant had only 12 jurors when the statute gave it 18 from which it could strike off 3 names. This requirement of the statute that 18 jurors should be on the list when parties must make their peremptory challenges is mandatory, and the court cannot depart from the essential requirements of the law. See Thomp. Trials, § 89; Thomp. & M. Jur. §§ 267, 270, and authorities cited. A denial of this request by the court, to which exception was taken, is a fatal error. At the close of the evidence the defendant moved the court to direct the jury to return a verdict in its favor, because under all the evidence the plaintiff is not entitled to recover. The court declined to do so, and this refusal to instruct the jury as requested was duly excepted to and is assigned as error. As the case goes back for a new trial it is sufficient to say in reference to this assignment that we have looked in vain through the record for evidence tending to show why the plaintiff, James, did not let go of the hand-car when the other men did, and that the order of Connors was negligent under the circumstances, and caused the injury complained of. There is no evidence to show that James was in such a position that he could not escape being injured, and that Connors knew it, and was at fault in giving the order. It cannot be presumed or inferred that because the hand-car turned over when it was being unloaded, and the plaintiff was injured, the railway company is responsible therefor. The refusal to give the instruction asked is error. Judgment is reversed, and the cause is remanded, with directions to grant a new trial.